## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**JAMES HARVEY YORK,**

     **Plaintiff,**

**vs.**                           **CIVIL ACTION NO. 3:20-CV-00739**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

     **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433.[1] By Order entered November 13, 2020 (ECF No. 4), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 17, 18)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **GRANT** Plaintiff's request for remand (ECF No. 17), **DENY** Defendant's request to affirm the decision of the Commissioner

---

[1] Although the procedural history shows the Plaintiff also filed for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f, the appeal at issue before this Court only concerns the ALJ's decision regarding the Plaintiff's Title II claim, therefore, the undersigned focuses on the relevant period prior to the expiration of the Plaintiff's date last insured (DLI), December 31, 2013.

(ECF No. 18); **REVERSE** the final decision of the Commissioner; and **REMAND** this action back to the Acting Commissioner for the reasons stated *infra*.

<u>**Procedural History**</u>

The Plaintiff, James Harvey York (hereinafter referred to as "Claimant"), protectively filed his application for Title II benefits on October 3, 2014 alleging disability beginning on April 14, 2012[2] because of tachycardia, bone spurs, missing vertebrae, arthritis, bipolar disorder, high blood pressure, and anxiety disorder. (Tr. at 413) His claim was initially denied on December 14, 2014 (Tr. at 177-187) and again upon reconsideration on February 9, 2015 (Tr. at 189-195). Thereafter, Claimant filed a written request for hearing on March 11, 2015 (Tr. at 196-197).

An administrative hearing was held on March 14, 2017 before the Honorable Laura Bernasconi, Administrative Law Judge ("ALJ"). (Tr. at 70-104) On April 14, 2017, the ALJ entered a partially favorable decision, effectively granting Claimant's SSI application. (Tr. at 146-166) Claimant appealed the decision, maintaining that he has been disabled prior to the expiration of his date last insured (DLI), December 31, 2013; following Claimant's Request for Review, for purposes herein, the Appeals Council remanded the matter on April 10, 2018 requiring the ALJ to further evaluate Claimant's "use of a medically assistive handheld device (cane) and any corresponding limitations in the residual functional capacity" and to "[g]ive further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations[.]" (Tr. at 167-172).

Another hearing was held on June 25, 2019 before ALJ Jerry Meade (Tr. at 57-68); on July 1, 2019, the ALJ sent a request for interrogatories to medical expert Susan W. Lee, D.O. (Tr. at

---

[2] Claimant amended his alleged onset date to April 14, 2012 from August 16, 2008 due to a prior unfavorable decision dated April 13, 2012. (Tr. at 13, 374)

3322-3343). In his request, the ALJ stated, "I am requesting that you provide an opinion for two specific periods, (1) March 11, 2015 to November 29, 2016, and (2) November 29, 2016 to the present." (Tr. at 3322) Dr. Lee submitted her responses concerning the two time periods (Tr. at 3344-3355). Following receipt of Dr. Lee's responses, a supplemental hearing was held on December 3, 2019 (Tr. at 37-55), and on January 30, 2020, the ALJ issued a partially favorable decision finding Claimant met the requirements for disability as of March 11, 2015 (Tr. at 8-36).

On February 7, 2020, Claimant again sought review by the Appeals Council of the ALJ's decision. (Tr. at 353-355) The ALJ's decision became the final decision of the Commissioner on September 15, 2020 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-6)

On November 11, 2020, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant, (hereinafter referred to as "Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 12, 13) Subsequently, Claimant filed a Memorandum in Support of Plaintiff's Motion for Judgment on the Pleadings (ECF No. 17), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 18), to which Claimant filed his Reply (ECF No. 19). Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 54 years old as by his DLI of December 31, 2013, accordingly, he is defined as a "person closely approaching advanced age" through the relevant period at issue in this appeal. See 20 C.F.R. § 404.1563(d). (Tr. at 26) Claimant has a high school education and has prior relevant work as a spring maker and saw operator, actually performing both jobs at the very heavy

exertional level. (Id.)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4ᵗʰ Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4ᵗʰ Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4ᵗʰ Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical

shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c). This Section provides as follows:

(c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.

(2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 of this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

## Summary of ALJ's Decision

In this particular case, the ALJ determined that Claimant met the requirements for insured worker status through December 31, 2013. (Tr. at 15, Finding No. 1) Moreover, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial

gainful activity since the alleged amended onset date, April 14, 2012. (Id., Finding No. 2) Under the second inquiry, for Title II purposes, the ALJ found that Claimant had the following severe impairments: obesity; osteoarthritis and meniscus tear of the right knee; degenerative joint disease and degenerative disc disease of the lumbar spine; hearing loss; and chronic obstructive pulmonary disease. (Id., Finding No. 3)

At the third inquiry, for Title II purposes, the ALJ concluded Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 19, Finding No. 4) The ALJ then found that for Title II purposes, Claimant had the residual functional capacity ("RFC") to perform medium work: "He must avoid concentrated exposure to noise exceeding 90 decibels (such as a hairdryer or a lawn mower); and irritants such as fumes, dust, odors, gases, and poorly ventilated areas." (Tr. at 20, Finding No. 5)

At step four, the ALJ found Claimant was not capable of performing past relevant work since April 14, 2012. (Tr. at 26, Finding No. 7) At the final step, the ALJ determined that in addition to the immateriality of the transferability of job skills, Claimant's age, education, work experience, and RFC indicated that, for purposes of Title II, there were jobs that existed in significant numbers in the national economy that Claimant could have performed. (Id., Finding Nos. 8-11) Finally, the ALJ determined Claimant had not been under a disability prior to March 11, 2015, but became disabled since then through the date of the decision (Tr. at 27, Finding NO. 13); the ALJ further determined that Claimant was not under a disability through his DLI, December 31, 2013 (Tr. at 28, Finding No. 14).

**Claimant's Challenges to the Commissioner's Decision**

Claimant asserts that the ALJ did not follow the Appeals Council's order to evaluate his

cane use and any corresponding limitations in the RFC, or consider his maximum RFC and provide an explanation for same during the relevant period concerning Claimant's Title II claim. (ECF No. 17 at 7-9) Claimant points out that the ALJ's interrogatories to medical expert Dr. Lee failed to include the relevant period related to Claimant's Title II claim; further, despite giving Dr. Lee's opinion great weight, the ALJ's decision seemed unaffected by her opinion that Claimant was unable to ambulate effectively due to his cane use and instead substituted his own opinion. (Id. at 9-10) As result, Claimant's Title II claim was prejudiced; Claimant asks for remand to correct these errors. (Id. at 10-12)

 In response, the Commissioner argues that the ALJ did consider Claimant's cane use in connection to his Title II claim, having announced during the hearing that the record contained only two exhibits from that period without any indication his cane was prescribed, resulting in the ALJ's use of the prior RFC for that period. (ECF No. 18 at 5) While Dr. Lee's responses to interrogatories did not concern the Title II period, she opined the evidence was insufficient to determine if Claimant's cane use was medically necessary even after Claimant's DLI. (Id. at 6) The ALJ's decision that Claimant was not disabled during the Title II period was entirely up to him per the Regulations, notwithstanding any medical opinion. (Id. at 6-7) The Commissioner asserts that the final decision was in accordance to law and is supported by substantial evidence. (Id. at 7)

In reply, Claimant asserts that while the ALJ concluded his cane use was not medically necessary prior to his DLI, he nevertheless provides no explanation for this conclusion, and provides no reason why he failed to ask Dr. Lee of her opinion concerning his cane use during that period. (ECF No. 19) Claimant suggests that if there is no significant difference between the

medical records regarding his cane usage prior to his DLI and afterwards, then Dr. Lee's opinion concerning his cane usage would very likely have been the same, thus affecting the RFC for the relevant period. (Id.)

**The Relevant Evidence of Record**[3]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

The Medical Record:

As stated *supra*, the relevant time period for this appeal is Claimant's alleged onset date, April 14, 2012, through his DLI, December 31, 2013 (Tr. at 374, 131)**.** Prior to April 14, 2012, Claimant treated for multiple disabilities, including lumbar spinal stenosis, COPD, atrial fibrillation, knee arthritis and meniscal tear, depression, anxiety, and hearing loss (Tr. at 489-496, 111). In 2012, Claimant's atrial fibrillation started becoming more symptomatic, causing episodes of a racing heart, palpitations, chest pain, and exhaustion; evidence of his atrial fibrillation was documented in an abnormal EKG on April 2, 2012, after he complained about chest pain that had "been there for weeks now" (Tr. at 534, 764). An acute care visit in September 2012 documented that he had had an elevated heart rate and palpitations "all night long" and frequent episodes lasting as long as 8-10 hours (Tr. at 697-698). Claimant was referred to a cardiologist in November 2012 who noted that he was still having episodes of palpitation lasting up to 30 hours at a time that started as a stomachache, turned into chest pain and fast heart rate, worsened by any activity, and left him in utter exhaustion (Tr. at 672-673). Extensive studies were ordered on Claimant's heart throughout 2012 due to his "extended periods of palpitations" (Tr. at 527-528). Although a 24-

---

[3] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

hour Holter Monitor Procedure and a 30-Day Event Monitor Study performed at the beginning of 2013 were not able to record any abnormal incidents, Claimant continued to present symptoms at least once a month (Tr. at 509, 513, 570-655). Later diagnostic studies developed after Claimant's DLI showed that he had a heart blockage and required surgery, ablation, and eventual placement of a pacemaker (Tr. at 1103, 1723).

Claimant also treated for lumbar spine stenosis and knee arthritis for many years, for which he compensated with a distinct limp (Tr. at 694, 724, 730). An MRI on May 31, 2013 revealed that he had spinal stenosis and facet arthritis from his L1-L5 vertebrae (Tr. at 485-486). Claimant attempted to manage his pain and radicular symptoms with lumbar steroid injections and near-continuous physical therapy (Tr. at 502-506). Claimant's doctors noted during the relevant time period that his gait was "guarded" and that he used a cane for ambulation (Tr. at 505, 576, 612, 735, 904, 1201, 1236, 1295, and 1329). Notably, an MRI of Claimant's lumbar spine on December 17, 2013 showed that his spinal stenosis and arthritis had advanced to the point of effacement of exiting nerves at the lower two vertebral levels (Tr. at 480-481). Claimant eventually required lumbar spine surgery in 2017 (Tr. at 165-166).

Dr. Lee Opinion Evidence:

The ALJ's requested Dr. Lee to provide an opinion concerning Claimant's impairments from two time periods: March 11, 2015 through November 29, 2016 and November 30, 2016 "to the present" (Tr. at 3322). Dr. Lee completed her responses to the ALJ's written interrogatories on July 17, 2019. (Tr. at 3344-3353) Regarding the first period, and pertinent to the issues on appeal, Dr. Lee indicated that Claimant required the use of a cane to ambulate, however there was

10

"insufficient information from the medical records to respond to these questions." (Tr. at 3349)[4] On July 22, 2019, Dr. Lee provided an updated opinion, though her determination regarding Claimant's cane use was unchanged. (Tr. at 3361) Regarding the second period, Dr. Lee again opined Claimant required a cane to ambulate, but the evidence remained insufficient to respond to the supplemental questions. (Tr. at 3373)

**The Administrative Hearings**

Claimant Testimony:

During the initial administrative hearing on June 25, 2019, Claimant testified that prior to December 31, 2013 he has had constant back pain, which was aggravated by movement, and being on his feet too long from standing or walking. (Tr. at 61) He stated that he had used a cane constantly, for about five or six years. (Id.)

At the supplemental hearing on December 3, 2019, Claimant confirmed that he was using a cane back in 2012 and 2013. (Tr. at 41) He explained that the cane was to help with his falling problem and to help with his balance. (Tr. at 42)

Claimant testified that he also was on chemotherapy drugs for cirrhosis during the entire year of 2012, which caused neuropathy (Tr. at 43-44).

Vocational Expert (VE) Testimony:

The ALJ asked the VE an initial hypothetical question regarding an individual with Claimant's age (54 as of December 31, 2013), education, and RFC at the medium level of exertion,

---

[4] The additional questions included the following:

How far can the individual ambulate without the use of a cane?
Is the use of a cane medically necessary?
With a cane, can the individual use his/her fee hand to carry small objects?

avoiding concentrated exposure to noise exceeding 90 decibels as well as fumes, dust, odors, gases and poorly ventilated areas. (Tr. at 50-51) The VE responded that such an individual could perform the work of a machine feeder, furniture inspector, and store laborer; at the light exertional level, the individual could perform work as a sorter, nuts and bolts assembler, and small parts assembler. (Tr. at 51) With additional hypothetical limitations, including lifting and carrying 20 pounds occasionally, 10 pounds frequently, and standing and walking for a total of one hour, 15 minutes at a time, and sitting for a total of 6 hours, 30 minutes at a time during an 8-hour workday, the VE testified that the individual would be limited to sedentary work. (Tr. at 51-52)

In response to Claimant's attorney's inquiries, the VE testified that if the individual required the use of a cane in standing and walking, then the medium and light jobs she identified, in addition to all medium and light jobs, would be eliminated, and only sedentary jobs would remain. (Tr. at 52)

## Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th

Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4ᵗʰ Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

As noted *supra*, Claimant has asserted that the ALJ's decision regarding his Title II claim, with a relevant period from April 14, 2012 to December 31, 2013, is not supported by substantial evidence. In short, had the ALJ properly evaluated Claimant's cane use, it could have potentially eroded the job base limiting Claimant to sedentary or less than sedentary work, resulting in a disability finding pursuant to the applicable Medical-Vocational Guidelines.

At the December 2, 2019 hearing, the ALJ reminded Claimant's counsel of the relevant period for Title II purposes and noted

> There are only two Exhibits in the current record that references that time period, B2F, B6F. There is minimal evidence in there that shows any worsening of the claimant's symptoms. With regard to the cane, there's a couple of references prior to the DLI of him using a cane, B2F, page 136, July the 5ᵗʰ, 2013, B2F, page 141.[5] However, there's no indication whatsoever, that he was prescribed that cane. He just chose to use it. So, I am gonna use [the prior RFC] for the Title 2 . . . . So, the T2 will be denied.

(Tr. at 53) Claimant's counsel pointed out to the ALJ that the record contained other references of Claimant's cane use: "There are other findings at B2F, page 28, page 135, as well as, page 258,[6]

---

[5] The undersigned notes that these exhibits concern treatment notes dated July 5, 2013 and June 24, 2013, respectively (Tr. at 613, 618). The cane use was actually mentioned on page 137 (Tr. at 614): "GEN WDWM pale but in NAD he ambulates with a cane". On page 136, a record from July 10, 2013 states that there is "[n]o history of falls in the past 12 months" (Tr. at 613). A treatment note from June 24, 2013 states, "Gait is guarded with use of cane." (Tr. at 618)

[6] The undersigned further notes that Claimant's counsel was referring to exhibits that concern another treatment note dated June 24, 2013, which also stated "Gait is guarded with use of cane" (Tr. at 505); a treatment note dated July 10,

prior to the date last insured[.]" (Tr. at 54) Claimant's counsel argued that these records supported

the Appeals Council remand, and that the records further support Claimant was limited to the

sedentary range of exertion prior to his DLI. (Id.) Nevertheless, the ALJ denied Claimant's request

to find him disabled prior to his DLI. (Id.)

The SSA issued Social Security Ruling ("SSR") 96-9p providing further guidance when

the issue of hand-held assistive devices arises:

> **Medically required hand-held assistive device:** To find that a hand-held assistive
> device is medically required, there must be medical documentation establishing the
> need for a hand-held assistive device to aid in walking or standing, and describing
> the circumstances for which it is needed (i.e., whether all the time, periodically, or
> only in certain situations; distance and terrain; and any other relevant information).
> The adjudicator must always consider the particular facts of a case.

See, *Titles II and XVI: Determining Capability to do Other Work--Implications of a Residual*

*Functional Capacity For Less Than a Full Range of Sedentary Work*, SSR 96-9p, 1996 WL

374185, at *7. (**bold** in original)

In the written decision, the ALJ observed that in order to be entitled for Title II benefits,

Claimant must establish disability prior to or on December 31, 2013, and ultimately determined

he did not meet that threshold. (Tr. at 13) While the ALJ acknowledged Claimant suffered from

several severe physical impairments through his DLI, he also recognized a multitude of non-severe

physical and mental impairments through his DLI (Tr. at 15-18). The ALJ further noted that

regarding Claimant's musculoskeletal impairments, "the treating physicians' reports show the

claimant does not have the ambulatory deficits described in Section 1.00(B)(2)(b) . . . [t]he

treatment notes indicate the claimant used a cane for walking; however, there is no indication that

---

2013 which stated "patient ambulatory with cane" (Tr. at 612); and a note dated April 18, 2012 that stated "Pt's cane returned to pt." (Tr. at 735)

it was medically necessary." (Tr. at 19, 505)[7] The ALJ also determined that Claimant's degenerative disc disease failed to meet Listing criteria because there was no evidence of lumbar spinal stenosis resulting in inability to ambulate effectively. (Tr. at 20) The ALJ acknowledged Claimant's testimony that he suffered from back pain prior to December 31, 2013, causing him problems with standing and walking, and using a cane "constantly for 5 to 6 years." (Tr. at 21) The ALJ again noted Claimant's testimony from the supplemental hearing that he used a cane in 2012 and 2013 and that he explained that it prevents falls, and that he later broke his ankle and uses a cane for balance. (Id.)

The ALJ observed that Claimant's physician noted he walked with a cane, however, he "did not indicate that it was necessary." (Tr. at 21, 614)[8] Following his review of the medical and other evidence of record, the ALJ found that the evidence showed Claimant's lumbar spine impairment was stable through his DLI, as "[p]hysical examination showed mild findings of tenderness of the lumbar spine, full range of motion with pain, intact motor and sensation, and normal deep tendon reflexes." (Tr. at 22, 654)[9] The ALJ further noted that an MRI from December 2013 also revealed Claimant's lumbar spine was stable. (Tr. at 22, 481)

The ALJ determined that the evidence from April 12, 2012 through December 31, 2013 supported medium work with certain limitations, *supra*, giving little weight to the state agency medical consultants' opinions, who found there was insufficient evidence to evaluate Claimant's physical impairments prior to his DLI. (Tr. at 23) While the ALJ again acknowledged some records

[7] The ALJ referenced a treatment record from the Huntington Veterans Affairs Medical Center (VAMC) dated June 2013. The provider observed that Claimant "presents to outpatient physical therapy in minimal distress. Gait is guarded with use of cane."
[8] The ALJ referenced a treatment record from the Huntington VAMC dated July 5, 2013.
[9] The ALJ reference a treatment record from the Huntington VAMC dated February 27, 2013.

showed Claimant used a cane prior to his DLI, he noted there was no evidence that it was prescribed and "no other indication that it was medically necessary." (Tr. at 23, 505)

While the ALJ's observation that the evidence concerning Claimant's cane use prior to his DLI did not show it was prescribed or medically necessary is accurate, the issue concerning development of the record prior to March 11, 2015 is significant.[10] The administrative hearing transcript makes clear why the ALJ chose that date: "I'm willing to consider an amended onset date of March the 11th, 2015. That is his Title 16 application date, he's 55 plus nine, on that date.[11] It's over a year and a half before Judge Bernasconi found him disabled. And that would be using the medical opinion as basis for that." (Tr. at 53) As noted by the ALJ, there were few records documenting Claimant's cane use prior to his DLI, and despite acknowledging Claimant's testimony that he used a cane prior to his DLI, the undersigned notes that this evidence remained unchanged from the prior administrative proceeding. Additionally, the undersigned recognizes that in its remand order, the Appeals Council noted "requesting review places the *entire record* of [Claimant's] case before the Council[]" (Tr. at 169; *emphasis* added), and further noted

> The decision mentions the claimant's use of an assistive handheld device/cane []. The decision, however, does not address how the claimant's use of a cane affects his residual functional capacity and there are no corresponding limitations in his residual functional capacity []. The evidence of record demonstrates that the claimant has frequently been observed using a cane during the period at issue (Exhibits B2F, pages 28, 99, 135, and 258[12]; B6F, page 62; B12F pages 78 and 113;

---

[10] Although the ALJ has a duty to fully and fairly develop the record, he is not required to act as plaintiff's counsel. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). Claimant bears the burden of establishing a *prima facie* entitlement to benefits. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.") Similarly, he "bears the risk of non-persuasion." Seacrist v. Weinberger, 538 F.2d 1054, 1056 (4th Cir. 1976).
[11] Claimant's age is significant at this time, as he changed age categories during the underlying proceedings, becoming a person of advanced age. See 20 C.F.R. § 404.1563(e); (Tr. at 26, 28)
[12] These reference the treatment notes from the Huntington VAMC dated June 24, 2013, January 31, 2014, July 10, 2013, and April 18, 2012, respectively (Tr. at 505, 576, 612, 735).

and B13, pages 4 and 38). Further evaluation of the claimant's use of a cane and its effects on his residual functional capacity is necessary.

(Tr. at 170) Clearly, the Appeals Council recognized the "period at issue" included Claimant's Title II claim. While the undersigned recognizes that there was simply no indication from the overall record of evidence that Claimant's hand-held assistive device was medically necessary as endorsed by SSR 96-9p, and that Dr. Lee could not determine if Claimant's cane use was medically necessary after the Claimant's DLI, it is unknown whether Dr. Lee's assessed limitations would have applied to the Title II claim, or pre-dated March 11, 2015, only because she was not asked.

Moreover, the Title II RFC assessment begs the question as to how Claimant was not similarly limited in lifting, carrying, standing, walking, and sitting.[13] Although the undersigned recognizes that the RFC determination is the most a claimant can do despite his restrictions or limitations, and is *solely* an administrative assessment made by the adjudicator based on all the relevant evidence in the record,[14] the fact remains that the Appeals Council ordered that the ALJ to evaluate Claimant's cane use, and to provide any corresponding limitations to the RFC for the "entire record" (Tr. at 169-170).[15] In addition to finding Claimant "required" a cane to ambulate since March 11, 2015, Dr. Lee opined he was further limited to the point that the "vocational expert testified that all light jobs would be eliminated. As such, [Claimant] is effectively limited to sedentary work." (Tr. at 27) Because the record shows that Claimant's cane usage was the same since the Title II relevant period, the ALJ's omission of same in his interrogatories to Dr. Lee had

---

[13] Since March 11, 2015, the ALJ determined Claimant was limited to lifting and carrying 20 pounds occasionally, 10 pounds frequently, and can stand a total of one hour (15 minutes at a time), can walk a total of one hour (15 minutes at a time), and can sit a total of six hours (30 minutes at a time). (Tr. at 24, Finding No. 6) These RFC limitations are identical to those endorsed by Dr. Lee (Tr. at 3348-3349, 3360-3361).

[14] See SSR 96-8p, 1996 WL 3744184, at *1; 20 C.F.R. §§ 404.1545(a) and 404.1527(d); Felton-Miller v. Astrue, 459 Fed. App'x. 226, 230-231 (4th Cir. 2011).

[15] An adjudicator is required to take any action ordered by the Appeals Council. 20 C.F.R. § 404.977(b) ("The administrative law judge shall take any action that is not inconsistent with the Appeals Council's remand order.")

a prejudicial affect on Claimant's Title II claim: despite being unable to determine if his cane was medically necessary, Dr. Lee nevertheless found he had significant physical limitations that ultimately reduced him to sedentary work. Even during the Title II relevant period, if Dr. Lee opined similar limitations, a finding of "disabled" would be directed by Medical-Vocational Rule 201.14.

In sum, the undersigned **FINDS** that that the ALJ improperly evaluated Claimant's cane use for purposes of Title II, and failed to provide an adequate explanation as to how his cane use affected his RFC prior to his DLI, because this Court is "left to guess about how the ALJ arrived at his conclusions." See <u>Mascio v. Colvin</u>, 780 F.3d 632, 637 (4th Cir. 2015). Accordingly, the undersigned **FINDS** the decision concerning Claimant's Title II claim is not supported by substantial evidence.

## <u>Recommendations for Disposition</u>

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Claimant's request for remand (ECF No. 17), **DENY** the Defendant's request to affirm the decision (ECF No. 18), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C § 405(g) for further administrative proceedings in order to determine the impact of Claimant's cane use on his RFC prior to his DLI.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules

6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: July 28, 2021.



Omar J. Aboulhosn
United States Magistrate Judge